NOTICE
Decision filed 01/31/23. The
text of this decision may be
changed or corrected prior to
the filing of a Petiion for
Rehearing or the disposition of
the same.

2023 IL App (5th) 230035

NO. 5-23-0035

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ACCURACY FIREARMS, LLC, AARON CARTER, AARON WERNZ, ABIGAIL GUZMAN, ADAM DAVIS, ADAM DIEPHOLZ, ADAM FORTNER, ADAM GRAY, ADAM ROTH, ADAM STONE, ADRIAN ZGAMA, ALAN CAZZATO, ALAN RICHARDSON, ALBERT BARKER, ALEX CHAMBERS, ALFREDO DIAZ, ALICE OLIVER, ALISON ROCK, AMANDA MOLL, AMANDA PROPST, AMANDA STOTTS, AMBER BAILEYGAINES, AMBER BAUMAN, AMOS KAFFENBARGER, ANDREW BOWMAN, ANDREW CRAIG, ANDREW STEINBACH, ANDREW ZASADNY, ANDY SHAW, ANGEL CARDONA, ANGIE KNAPP, ANN MARIE SUTER, ANTHONY CONIGLIO, ANTHONY COOK, ANTHONY CRAVEN, ANTHONY GALLES, ANTHONY KANIK, APRIL PETERSON, APRIL SCHWEITZER, ARTHUR DUBIEL, ASHLEY ESSLINGER, ASHLEY FLUECHTLING, ASHLEY STRYKER, BARBARA STEIN, BEN HAMILTON, BENJAMIN BANGERT, BENJAMIN BEHRENS, BENJAMIN DILLARD, BENJAMIN KOWALSKI, BETH NORWICK, BEVERLY BERBERET, BILL LALEZAS, BLAKE CALLAWAY, BLAKE KUHL, BOGUSLAW SOJKA, BRAD BUYSSE, BRAD LEMAN, BRAD PETERSON, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Effingham County. |

1

BRADICK YOUNG, BRADLEY )
SCHWARZ, BRADLEY SHEMLUCK, )
BRANDI SCHLIEPER, BRANDON )
DURBIN, BRANDON HANKS, )
BRANDON PRESTIN, BRANDON )
VANDER MEERSCH, BRANDON )
WADDELL, BRENDA STOETZER, )
BRENT WIETTING, BRETT CLARK, )
BRIAN BAHR, BRIAN BOLLEGAR, )
BRIAN EAKER, BRIAN INGRAM, )
BRIAN LASKEY, BRIAN McQUEEN, )
BRIAN ROBBINS, BRIAN SCHULTZ, )
BRIAN SULLIVAN, BRUCE GRAFTON, )
BRUCE KARSTEN, BRYAN ALFORD, )
BRYNT MONTGOMERY, CALEB )
ANDREATTA, CALLIE CAULK, )
CARRIE RICE, CATHERINE A. O'SHEA, )
CHAD CARPENTER, CHAD FORMAN, )
CHAD JEWETT, CHAD LANPHIERD, )
CHAD MAYNARD, CHAD McGINNIS, )
CHAD McNAUGHTON, CHAD RUOT, )
CHADRICK LAWRENCE, CHARLES )
ATWATER, CHARLES BARBOUR, )
CHARLES CLINE, CHARLES )
JOHNSON, CHERYL KOZLOV, CHRIS )
DILULLO, CHRIS METCALFE, CHRIS )
OLIVER, CHRIS ROSE, CHRIS W COX, )
CHRISTINA BASTILLA, CHRISTINA )
CLAUSEN, CHRISTINE WATSON, )
CHRISTOPHER BACHMAN, )
CHRISTOPHER DOHERTY, )
CHRISTOPHER HUGHES, )
CHRISTOPHER JOHNSON, )
CHRISTOPHER KINDRED, )
CHRISTOPHER KORGER, )
CHRISTOPHER REICH, )
CHRISTOPHER SOUKUP, )
CHRISTOPHER UZELLA, )
CHRISTOPHER VIEBACH, )
CHRISTOPHER VOSS, CHRISTY )
FOSTER, CINDI KLENKE, CINDY )
BRAGG, CLAUDIA GRUBER, CLAY )
SIDWELL, CLAYTON WELLS, )

CLINTON TULL, CODY ROSE, COLIN                )
PATTON, CONNIE LARGE, COREY                   )
DASENBROCK, CORINNE NANCE,                    )
COURTNEY PERIDORE, CRAIG                      )
FOSTER, CRAIG HAMRICK, CRAIG                  )
MACHUGA, CRAIG NUNNALLY,                      )
CRAIG PETERSEN, CRYSTAL KINDER,               )
CRYSTAL MEEKS, CURT                           )
HENDERSON, CURTIS JACOBS,                     )
CURTIS WAGENBACH, CYNTHIA                     )
MULLER, CYNTHIA WILLIAMS, DALE                )
VOSS, DALLAS CARON, DAN                       )
ALBERTI, DAN GILMORE, DAN                     )
SCOTT, DANA M. BOYER, DANIEL                  )
BALOUN, DANIEL BOHNENSTIEHL,                  )
DANIEL COLE, DANIEL GLOMB,                    )
DANIEL GUSTAFSON, DANIEL                      )
HERDA, DANIEL IHRKE, DANIEL                   )
JEWETT, DANIEL STAAB, DANIEL                  )
WOLSEY, DANIELLE PENMAN, DARIN                )
BAZZELL, DARIN MILLER, DARIN                  )
PETERSON, DARRELL JOHNSON,                    )
DARRYL WHITMORE, DAVE                         )
ECKERTY, DAVID ACCATHARA,                     )
DAVID CAULK, DAVID CLARK, DAVID               )
DIPRIMA, DAVID EARP, DAVID                    )
GRIMESTAD, DAVID GUSS, DAVID                  )
JANSEN, DAVID KOSTERS JR., DAVID              )
MARTIN, DAVID McKEIGHEN, DAVID                )
MOTHKOVICH, DAVID PAUL                        )
BLUMENSHINE, DAVID SCHLIEPER,                 )
DAVID DEBORAH BRYANT, DEBORAH                 )
LEMKE, DEBRA PERRY, DEBRA                     )
WOLSEY, DEBRA WOMBLES, DEENA                  )
KRIEGER, DENNIS CARLOCK,                      )
DENNIS MEIER, DENNIS SCHULTZ,                 )
DENZEL JINES, DEVIN KURFMAN,                  )
DILLON DARBYSHIRE, DILLON                     )
FORTNER, DOMINIC SABATINA,                    )
DONALD BAYLES, DONALD FOSTER,                 )
DONALD GILBERT, DONALD KALINA,                )
DONALD RIENTS, DONNA BUSS,                    )
DONNA WESTER, DOUGLAS                         )

ECKROTE, DOUGLAS J MORRISSEY, )
DOUGLAS ROOSEVELT, DOUGLAS )
RYAN, DUANE CERRITO, DUSTIN )
PRATHER, DUSTIN RIGHTNOWAR, )
ED RODRIGUEZ, EDVIN KUMI, )
EDWARD MUSIAL, EDWIN ROLDAN, )
ELAINE LORINCZI, ELIZABETH )
LUBBEN, ERIC BREEZE, ERIC )
CINNAMON, ERIC DIEDRICK, ERIC )
DUBIEL, ERIC SHIRLEY, ERIC )
WEBER, ERIK BAILEYGAINES, ERIK )
FINKLE, ERIK SHELDON, EVERETT )
McCULLEY, FRANCISCO LOPEZ, )
FRANK SMITH, FRANK WILLIAMS, )
FRANK WILSON, FRANKLIN STONER, )
FRED SNODGRASS, GARY AMES, )
GARY ELLIS, GARY FRY, GARY )
McCULLOUGH, GARY PHELPS, GARY )
SMITH, GEOFFERY BEATTY, )
GEOFFREY CRABTREE, GEOFFREY )
MONARI, GEOFFREY PRESTON, )
GEOFFREY STARR, GEORGE IHRKE, )
GEORGENA OTTOLINI, GERARD )
AVELLONE, GILBERT JIMENEZ, )
GLENDA GARRETT, GLENN )
MULLALLY, GLENN REED, GORDON )
GULLEY JR., GRACE GRAY, GREG )
BUBAN, GREG CHEAURE, GREG )
HALE JR., GREG REBMAN, GREG )
RICHARDSON, GREG SANTAY, GREG )
SCHMIDT, GREG WICINSKI, )
GREGORY GIPSON, GREGORY )
ICENOGLE, GREGORY MOFFITT, )
GREGORY SHUFF, GRZEGORZ )
GANCARZ, GUY MERKER II, GWYNNE )
ANDERSON-BECK, HAL LANGHAM, )
HASSEN DRISSI, HAYDEN NORRIS, )
HEIDIJO ELYEA, HUNTER FLORES, )
IAN GEBBIA, ILENE BRINER, JACEK )
SEK, JACK LOMBARDI II, JACOB )
ALLEN, JACOB HODEL, JACOB )
JOHNSON, JACOB KRUPOWICZ, )
JACOB MANNING, JACOB MURPHY, )

4

JACOB PEIPER, JACOB SMITH,                          )
JACQUELINE GARRETSON, JADE                          )
HAMER, JAIMIE BAKER, JAKE                           )
GLASNOVICH, JAMES BUNCH, JAMES                      )
C. SELLERS, JAMES CARROLL, JAMES                    )
CLINTON, JAMES COOK, JAMES COX,                     )
JAMES GRIFFIN, JAMES HASKETT,                       )
JAMES JODISON, JAMES JONES,                         )
JAMES LEE, JAMES LEIPART, JAMES                     )
LOGSDON, JAMES LOLAN, JAMES                         )
MUHICH, JAMES PARKER, JAMES                         )
RATZ, JAMES WALKER, JAMIE                           )
HARRIS, JAMIE KOCH, JAMIE                           )
MILTON, JAN JAREK, JANET BLADE,                     )
JANET GESELL, JANET MEYER,                          )
JARED BARKER, JARED HARRIS,                         )
JARED HELLER, JARED McCAMMON,                       )
JAROSLAW WORWA, JASON                               )
BANGERT, JASON DODD, JASON                          )
DONOVAN, JASON DZIEDZIC, JASON                      )
FLOYD, JASON GOODWIN, JASON                         )
HAAG, JASON HODEL, JASON KERR,                      )
JASON LANGSTON, JASON                               )
MARQUES, JASON MERRILL, JASON                       )
NOE, JASON SHARP, JASON                             )
SORENSEN, JASON TRYBOM, JAY                         )
ANDERSON, JEFF REHKEMPER, JEFF                      )
BROWN, JEFF WRIGHT, JEFFERSON                       )
PERKINS, JEFFERY RANDECKER,                         )
JEFFREY FURTEK, JEFFREY                             )
GOETZEN, JEFFREY HODEL,                             )
JEFFREY KEITHLEY, JEFFREY                           )
KINDGREN, JEN MARTIN, JENNIFER                      )
CENTOLA, JENNIFER                                   )
CHROSTOWSKI, JENNIFER HERDA,                        )
JENNIFER PERHAM, JENNIFER                           )
PETERSON, JEREMIAH SIMMONS,                         )
JEREMY ALLEN, JEREMY RAKERS,                        )
JERRY BONEY, JERRY LUTKER,                          )
JERRY STONEBURNER, JERRY                            )
WOKER, JIM KRUTA JR., JIM                           )
McILROY, JODY BENSON, JOEL                          )
HOHBEIN, JOHN ARMSTRONG, JOHN                       )

BARHAM, JOHN BELL, JOHN BOONE, )
JOHN CARON, JOHN FOWLER, JOHN )
FRANZEN, JOHN FREEMAN, JOHN )
GALLAGHER, JOHN HARMON, JOHN )
KIESLAR, JOHN KRENZ, JOHN M. )
ODLE, JOHN McLAUGHLIN, JOHN )
MILLER, JOHN REYNOLDS, JOHN )
SCHACKMANN, JOHN SIEMENS, )
JOHN STRAIN JR., JOHN THOMAS )
HOWES, JOHN WALTERS, JOHN )
WEAVER, JOHNATHAN SEIDEL, JON )
BECKER, JON BLY, JONATHAN )
BEHRENS, JONATHAN LYONS, )
JONATHAN METCALF, JONATHAN )
PARDO, JONATHON HOLLAND, )
JORDAN CREEK FIREARMS, LLC, )
JORDAN CUNNINGHAM, JOSEPH )
BAUER, JOSEPH MEYERS, JOSEPH )
O'KEEFE, JOSEPH ROSSI, JOSH )
RICKEY, JOSHUA EVANS, JOSHUA )
FULK, JOSHUA MAURER, JOSHUA )
McDOWELL, JOSHUA WHITE, JR )
MAY, JULIE ARMSTRONG, JULIE )
LYONS, JUSTIN BROOKS, JUSTIN )
BUERSTER, JUSTIN COUCH, JUSTIN )
NORRIS, JUSTIN WEISS, JUSTIN )
ZELKOWSKI, JUSTYNA WRONKA, K. )
DUSTIN COOPER, KAREN )
KELLEHER, KAREN LALAGOS, )
KAREN TIRIO, KARL ZAWADZKI, )
KATHLEEN LEAF, KATHLEEN )
RAMSEY, KAZIMIERZ MISIASZEK, )
KEITH HAMANN, KEITH KUHL, )
KELLY HARMS, KELLY STICH, KELLY )
WOLAK, KEN HALL, KENDALL )
TUCKER, KENNETH BRYANT, )
KENNETH HOUSTON, KENNETH )
KLENKE, KENNETH NEILSEN, )
KENNETH SMITH, KENNETH )
STROPNIK, KENNETH WALTHER, )
KENNY BRAGG, KENT KARWOSKI, )
KENT WILLIAMS, KEVIN BROUK, )
KEVIN CARTWRIGHT, KEVIN )

HALEMEYER, KEVIN HARPER, KEVIN )
KOTH, KEVIN KOUTSKY, KEVIN )
McKITTRICK, KEVIN MOUNTJOY, )
KEVIN SAWATZKY, KEVIN SENNOTT, )
KEVIN STOLL, KHAALIS )
ALEXANDER, KIM IAFFALDANO, KIM )
RIGOR, KIMBERLEY SZALKUS, )
KIMBERLY ABATANGELO, KIMBERLY )
ADKINSON, KIMBERLY NORWOOD, )
KIRK ALLEN, KIRK ORELUP, KORI )
DUNCAN, KRISTI HICKAM, KRISTIN )
OTTOLINO, KRISTIN PLINER, )
KRISTIN STROM, KRZYSZTOF )
BARTOSZEK, KURT DUEHR, KURT )
PEPPERELL, KYLE NEMETH, KYLE )
SCHROEDER, KYLE SCHULTZ, KYRA )
DAVENPORT, LANCE BRISTOW, )
LANCE MARCZAK, LARRY AGERS, )
LARRY NATTIER, LARRY WILLIAM )
STAMMER JR., LAURA BECKMANN, )
LAURA DeYOUNG, LAURA DIAZ, )
LAURA HOIS, LAURA HUGHES, )
LAURA PACKWOOD, LAURA REECE, )
LAURA RUSSELL, LAUREN MILLER, )
LAWRENCE McKENNA, LEE )
TANNER, LES HESS, LEWIS BLEVINS, )
LINDA BROCKMAN, LINDA FUHR, )
LINDA SABO, LISA CICHONSKI, LISA )
L. BOWMAN, LISA PECK, LLOYD )
WOLFORD, LOGAN FIFER, LUKE )
MAYNARD, LYLE PROSSER, LYNDELL )
WAGGENER, LYNDLE WEDDING, )
LYNETTE DECKER, MANDY )
CULVERLUCAS, MARC JACOBS, MARCELLO )
VALLE, MARGARET HEDLUND, )
MARIUSZ PYCZ, MARK BILLHARTZ, )
MARK HANUSIN, MARK JAKOB, )
MARK LEJA, MARK MAZMAN, MARK )
OLAUGHLIN, MARK PEARSON, MARK )
PINGSTERHAUS, MARK STEEN, )
MARSHALL HALE, MARTIN )
HENDERSON, MARTIN MAGGIO, )
MARTIN MOHR, MARVIN HAYDEN, )

MARY KOSTERS, MATT CRAIG, MATT )
HOXTELL, MATT LISNICH, MATT )
SUTTON, MATTHEW BARRICK, )
MATTHEW BOWMAN, MATTHEW )
DUBIEL, MATTHEW HAMANN, )
MATTHEW HUBER, MATTHEW KERN, )
MATTHEW MEYER, MATTHEW )
NEWTON, MATTHEW PALMER, )
MATTHEW PETERSON, MATTHEW )
SCHLACHTER, MATTHEW )
SINNOKRAK, MATTHEW WHITCOMB, )
MATTHEW WIEG AND, MELISSA )
HINKAMPER, MELODY SEIDEL, )
MICHAEL BAKER, MICHAEL BALL, )
MICHAEL CLAUSEN, MICHAEL )
CUMMINGS, MICHAEL DANIELSON, )
MICHAEL E. KACKERT, MICHAEL )
ESPOSITO, MICHAEL FOLSOM, )
MICHAEL HARLA, MICHAEL )
JENNINGS, MICHAEL JORDAN, )
MICHAEL KELLY, MICHAEL )
KESSLER, MICHAEL KRAEMER, )
MICHAEL KRUSE, MICHAEL )
LAWRENCE, MICHAEL LAYNE, )
MICHAEL McKENNA, MICHAEL )
MEYER, MICHAEL MITCHELL, )
MICHAEL MOODY, MICHAEL )
MORLEY, MICHAEL MOSSMAN, )
MICHAEL MUFF, MICHAEL NICOSON, )
MICHAEL NIELSEN, MICHAEL )
PETRUCCI, MICHAEL SCHIEK, )
MICHAEL SHUFF, MICHAEL STARE, )
MICHAEL STIERN, MICHAEL )
THOMPSON, MICHELE BRANNAN, )
MICHELE KESSLER, MICHELLE FESI, )
MICHELLE TRCKA, MIKE MOLLYANN )
HESSER, MONIKA CASEY, N JILL JAY, )
NATALIE ENGELBRECHT, NATASHA )
MALDONADO, NATHAN CAMPBELL, )
NATHAN GRISSOM, NATHAN )
PRASUN, NATHAN STEWART, )
NATHEN BEASLEY, NEAL STOLLER, )
NEIL LUALLEN, NICHOLAS BYERS, )

NICHOLAS STIPANOVICH, NICOLE )
DONOVAN, NORMAN ROSE, ORVILLE )
BRETTMAN, OSCAR CASEY, OSCAR )
WORWA, PATRICIA EDMONDS, )
PATRICIA IMHOFF, PATRICIA )
MAYOKATSION, PATRICIA POTOCKI, )
PATRICK GANNON, PATRICK )
HARDIEK, PATRICK McDOUGAL, )
PATRICK SENORSKI, PATRICK )
SMITH, PAUL ESTELL, PAUL J. RUIZ, )
PAUL JENSEN, PAUL MULLER, PAUL )
SANDERS, PAUL SLOCUM, PAWEL )
LESNIAK, PAWEL SZUBA, PEGGY )
BRANDON, PENNY MARKS, PETER )
DINKLAGE, PETER TRENKENSCHUH, )
PHILIP J HEPP, PHILLIP HUSTON, )
PIOTR CISON, PIOTR DOROSZ, )
PRECISION PRODUCTS LLC, )
PRESTON PETERSEN, QUENTIN )
MYERS, RANDY BLANKENSHIP, )
RANDY HARVEY, RANDY KOHNERT, )
RANDY RHEINECKER, RAUL )
LARACUENTE, RAYMOND BLADE, )
RAYMOND CROMPTON, RAYMOND )
DUBIEL, RAYMOND LUEBBERT, )
REBECCA LaPORTA, REBECCA VANT, )
REGAN DEERING, RICH MARTIN, )
RICHARD GOODWIN, RICHARD )
KLIBER, RICHARD KORALLUS, )
RICHARD MILLER, RICHARD MIX, )
RICHARD MORTON, RICHARD )
PESLAK, RICHARD POWERS, )
RICHARD PROSSER, RICHARD )
SIMMERT, RICKY BOXX JR., RICKY )
SCHNETZLER, RICKY WILLIAMS, ROB )
SPENCER, ROBBIE STOUT, ROBERT )
BEVIS, ROBERT BIANCHETTA, )
ROBERT BUNNELL, ROBERT )
CARLTON, ROBERT CARPENTER, )
ROBERT CRIPPEN, ROBERT FIENE, )
ROBERT JENSEN, ROBERT KING, )
ROBERT LESSER, ROBERT )
PIERPOINT, ROBERT PITCHFORD, )

ROBERT RADO, ROBERT ROY, )
ROBERT RYMSZA, ROBERT )
STEVENSON, ROBERT WAGNER, )
ROBERT WALTERS, ROBERT WEBB, )
ROBERT WILLIAMS, ROBIN MARTIN, )
ROBIN OTTOLINI, RODNEY JUDY, )
RODNEY WASHAUSEN SR., ROGER )
RICHARDSON, ROGER ROBERTS, )
ROLAND LISCHALK, RON )
PROMISSON, RONALD HESSER JR., )
RONALD KASKOVICH JR., RONALD )
LEMKE, ROSS PARLAPIANO, RUBEN )
PAZMINO, RYAN ASHLEY, RYAN )
HILL, RYAN LOGSDON, RYAN )
MOONEY, RYAN RUPPEL, RYNE )
SCOTT, S RYAN GANNAWAY, )
SALVATORE A CIANFLONE, SAMUEL )
DERRICKSON, SANDRA BACHAR, )
SANDRA EARP, SARAH ZIEGLER, )
SCOT DECKER, SCOTT COLLINS, )
SCOTT CORLEY, SCOTT FITZGERALD, )
SCOTT FOSTER, SCOTT HARPER, )
SCOTT HUNT, SCOTT KASPAR, )
SCOTT KOCHANEY, SCOTT MALONE, )
SCOTT McCORD, SCOTT )
MEINHARDT, SCOTT SHAFFER, )
SCOTT SHOUP, SCOTT STANOWSKI, )
SCOTT SWIDLER, SHANE )
McDERMOTT, SHANE MENNINGA, )
SHANE YEARIAN, SHAWN GOODWIN, )
SHERI TUCKER, SHERRI AKERS, )
SHERRY RAMEY, SHON BAKER, )
SONNY ROSS, STACEY HAGAN, )
STACY SEVERINS, STANISLAW )
WRONKA, STANISLAW ZEGLIN, )
STAVEN HOWARD, STEPHAN )
BJELKE, STEPHANIE DOOLEY, )
STEPHANIE NENN, STEPHEN )
AUSTIN, STEPHEN BRUNET, )
STEPHEN HARNEY, STEPHEN )
HASSEMAN, STEPHEN LANGHEIM, )
STEPHEN RICHARDSON, STEPHEN )
SENNOTT, STEVE ATWOOD, STEVE )

BENTLAGE, STEVE BOSNIACK,                )
STEVE DURBIN, STEVE GARITE,              )
STEVE GLASCOCK, STEVE PLOCHER,           )
STEVEN ABBA, STEVEN ACRED,               )
STEVEN BRUNS, STEVEN CROSSLEY,           )
STEVEN EDENBURN, STEVEN                   )
ELLER, STEVEN GREENE, STEVEN             )
MAY, STEVEN SAWATZKY, STEVEN             )
SMITH, STEVEN WASHBURN, SUSAN            )
DEMMA, SUSAN ELLSWORTH, SUSAN            )
FRY, SUSAN HEAVIN, SUSAN                  )
MORRISSEY, SUSAN WILKEN, TAD             )
PUTRICH, TAMARA ALLEN, TAMARA            )
EFSEN, TAMMY BURNHAM, TANNER             )
THOELE, TARA BANGERT, TARA               )
BROWN, TED AHNER, TERRENCE J.            )
RONCZKOWSKI, TERRY MOORE,                )
TERRY WILKEN, JASON BRAGG,               )
THOMAS COSTELLO, THOMAS                   )
DILLON, THOMAS E SPARENBERG,             )
THOMAS JONES, THOMAS KOCH,               )
THOMAS SENNOTT, THOMAS                    )
TUCKER, TIFFANY SABATINA, TIM            )
BRUCE, TIM HOESLI, TIM MILLER,           )
TIM WEISS, TIMOTHY BALL,                  )
TIMOTHY BURLINGAME, TIMOTHY              )
SCHROEDER, TIMOTHY SIEKMANN,             )
TIMOTHY TAYLOR, TIMOTHY WOOD,            )
TINA SUSA, TODD APATO, TODD              )
DEEDRICK, TODD GREEN, TOM                 )
KOPACZ, TOM LENTZ, TOM                    )
WOMBLES, TOMASZ SMALEC, TONY             )
RHODES, TRACI GOLDSCHMIDT,               )
TRACI WOOD, TRACY MANNS, TRACY           )
PLEIN, TRAVIS BECK, TRAVIS               )
LINGAFELTER, TRAVIS PHELPS,              )
TRAVIS UTTERBACK, TRAVIS                  )
WILHITE, TRENT ARVIN, TRENT              )
ROBINSON, TRISHA BRAGG, TROY             )
HARMS, TROY KRIGBAUM, TROY               )
SMITH, TRUMAN SELLERS, TYLER             )
ROYSE, TYLER SIMS, VALERIE               )
NICOSON, VICKI PASKERT, VICTORIA         )

LOPEZ, VINCE HAMER, VINCENT            )
ROMANO, VIRGINIA BARNARD, VITO         )
LIROSI, VOODOO FIREARMS LLC,            )
WALDEMAR SARAT, WALLACE                 )
McDUFFEY, WENDI ARLIS, WENDIE           )
LUDWIG, WENDY MENIGOZ, WENDY            )
MILLER, WESLEY KEMPER, WILLIAM          )
ALBRECHT, WILLIAM B. GRAY,              )
WILLIAM CURRAN, WILLIAM                 )
HAMPTON, WILLIAM HARDY,                 )
WILLIAM HEFFERNAN, WILLIAM              )
KERTH, WILLIAM KEYES, WILLIAM           )
KLINOWSKI, WILLIAM LAPP,                )
WILLIAM REED, WILLIAM SWANSON,          )
WILLIAM WEINMAN, WILLIAM                )
WONCH, WOJCIECH RECZEK,                 )
WOJCIECH TARCHALA, WYATT                )
ROGERS, ZACH ROSE, ZACHARY              )
KALVE, ZACHARY ROBERTS,                 )
ZACHARY SARVER, ZACHARY                 )
SCHEETZ, RYAN CUNNINGHAM,               )
and CHRIS STEVENS,                      )
                                        )
    Plaintiffs-Appellees,                )
                                        )
v.                                      )        No. 23-MR-4
                                        )
JAY ROBERT PRITZKER, in His Capacity as )
Governor; KWAME RAOUL, in His           )
Capacity as Attorney General; EMANUEL   )
CHRISTOPHER WELCH, in His Capacity as   )
Speaker of the House; and DONALD F.     )
HARMON, in His Capacity as Senate President, )
                                        )
    Defendants                           )
                                        )
(Jay Robert Pritzker, in His Capacity as Governor; )    Honorable
and Kwame Raoul, in His Capacity as Attorney )          Joshua C. Morrison,
General, Defendants-Appellants).        )        Judge, presiding.

_____

    JUSTICE VAUGHAN delivered the judgment of the court, with opinion.
    Presiding Justice Boie concurred in the judgment and opinion.
    Justice Moore concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    The narrow issue before us in this case is whether the circuit court of Effingham County properly granted a temporary restraining order (TRO) in favor of plaintiffs under Illinois law. In counts I, II, and III of plaintiffs' verified complaint, plaintiffs alleged that the procedure by which Public Act 102-1116 (eff. Jan. 10, 2023) (Act or Protect Illinois Communities Act) became law violated the Illinois Constitution and therefore denied them due process of law. In count IV, plaintiffs alleged that the exemptions provided for in the Act violate the equal protection clause of the Illinois Constitution based on their right to keep and bear arms.

¶ 2                                   I. BACKGROUND

¶ 3    On January 17, 2023, plaintiffs filed a verified five-count complaint against the defendants. Counts I through IV sought a declaratory judgment; count V requested injunctive relief.

¶ 4    The relevant facts common to all counts of the complaint are as follows. Plaintiffs alleged that they "desire to deliver, sell, import, or purchase an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge and/or manufacture, deliver, sell or purchase large capacity ammunition feeding devices as defined in 720 ILCS 5/24-1.9(a) and/or 720 ILCS 5/24-1.10(a)." The common facts also alleged that House Bill 5471 (HB 5471) was first introduced in the Illinois House of Representatives (House) on January 28, 2022, entitled as "An Act concerning Regulation." When introduced, HB 5471 was nine pages in length and sought to amend provisions of the Illinois Insurance Code. The synopsis for HB 5471 indicated the subject of the bill was focused on providing the e-mail address of the adjuster as well as other provisions regarding an insurance contract. On March 4, 2022, HB 5471 received three readings in the House.

13

¶ 5    On March 7, 2022, HB 5471 arrived in the Illinois Senate (Senate). The first reading occurred the same day and the bill was referred to the Assignments Committee. The second reading of HB 5471 took place on November 30, 2022. The common facts also alleged that

> "[o]n or about January 8, 2023, which was a Sunday afternoon at 3:00 P.M., before the third reading occurred in the Senate, Senator Don Harmon filed Senate Floor Amendment No. 1 which completely stripped the insurance provisions of the bill, which were being considered by the legislature all the way up until this time, and completely replaced them with new substantive proposed changes governing weapons, human[,] and drug trafficking."

The following day, Amendments 2, 3, 4, and 5 were presented in the Senate, which addressed Amendment 1. The amendments passed the Senate on January 9, 2023, and the bill was sent back to the House on January 10, 2023.

¶ 6    After returning to the House, HB 5471 was not read three times prior to voting on the bill. On January 10, 2023, the House voted to concur with the Senate amendments. After passing both the Senate and the House, Governor J.B. Pritzker (Pritzker) signed the Act into law. The Act, which comprised 111 pages included new legislation found at 5 ILCS 100/5-45.35; 430 ILCS 65/4.1; and 720 ILCS 5/24-1.9(a), 24-1.10(a), as well as amendments that included and/or removed text in the following statutes: 5 ILCS 140/7.5; 20 ILCS 2605/2605-35, 2605-51.1; 30 ILCS 500/1-10; 430 ILCS 65/2, 3, 4, 8; 430 ILCS 67/40, 45, 55; and 720 ILCS 5/24-1.

¶ 7    Count I of plaintiffs' verified complaint alleged that HB 5471, which became the Act once it was signed by Governor Pritzker, violated the single subject rule, and thus should be declared unconstitutional. Article IV, section 8 of the Illinois Constitution states that "[b]ills, except bills

for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). The plaintiffs alleged

"the subjects for which the amendments modified HB 5471 included, but were not limited to;

a) Ordered the criminal investigations unit to conduct investigations regarding human trafficking, illegal drug trafficking and illegal firearms trafficking;

b) Amended the law regarding the procurement of bids for certain services related to purchases of certain technology by the Illinois State Police;

c) Modifies the provision of firearms restraining orders;

d) Created new provisions in the law regarding the ban on certain semi-automatic weapons."

¶ 8    Count II alleged the Act violated the three-readings rule as required by article IV, section 8 of the Illinois Constitution and thus should be declared unconstitutional. The relevant section of the Illinois Constitution states as follows:

"(d) A bill shall be read by title on three different days in each house. A bill and each amendment thereto shall be reproduced and placed on the desk of each member before final passage.

Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject. Appropriation bills shall be limited to the subject of appropriations.

A bill expressly amending a law shall set forth completely the sections amended.

15

The Speaker of the House of Representatives and the President of the Senate shall sign each bill that passes both houses to certify that the procedural requirements for passage have been met." Ill. Const. 1970, art. IV, § 8(d).

In count II, plaintiffs acknowledged the enrolled-bill doctrine, which will be discussed in further detail in the analysis, and asserted the enrolled-bill doctrine should be abandoned and/or abrogated.

¶ 9        Count III alleged that the passage of the Act violated due process as required by article I, section 2 of the Illinois Constitution, and that the Act should be declared unconstitutional. Specifically, plaintiffs alleged they "were denied any meaningful opportunity to participate in the passage of HB 5471 which attempts to materially impair their fundamental rights to bear arms." As further explanation, plaintiffs alleged the "due process violation being complained of herein is the complete and total failure of the [d]efendants to comply with express constitutional procedural guarantees afforded the [p]laintiffs under Ill. Const. 1970, art. IV, § 8(d)."

¶ 10        Count IV alleged that the passage of the Act violated the equal protection clause of article I, section 2 of the Illinois Constitution, and the Act should be declared unconstitutional. Plaintiffs alleged that the "constitutional guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner." Plaintiffs also alleged that 720 ILCS 5/24-1.9 and 720 ILCS 5/24-1.10 created different categories of citizens who are subjected to the requirements of these statutes. The plaintiffs further alleged that within the above-mentioned statutes, there were seven enumerated classifications of persons who were exempt from compliance with the provisions of those sections. Plaintiffs alleged that "[c]reating an exempt status for those persons is not only irrational and completely lacking anything approaching common sense, there are no set of facts wherein it can survive a constitutional attack based upon equal protection regardless of the standard of review."

16

¶ 11    Count V alleged that because of the alleged unconstitutional actions set forth in counts I, II, III, and IV, an injunction should be entered that permanently enjoined defendants, and anyone under their direction and control, from enforcing the Act. Count V is not relevant to our review because count V seeks a permanent injunction, and we are only reviewing the TRO.

¶ 12    On the same day they filed their complaint, plaintiffs simultaneously filed a verified emergency motion for a TRO, which incorporated the verified complaint. Plaintiffs also filed a notice of hearing, setting the motion for hearing the following day, January 18, 2023.

¶ 13    Prior to the hearing, defendants Pritzker and Kwame Raoul (Raoul), in his capacity as Attorney General of Illinois, filed a response to plaintiffs' emergency motion for a TRO. The circuit court conducted a hearing on the emergency motion for TRO on January 18, 2023, as noticed. Counsel for plaintiffs as well as counsel for Pritzker and Raoul were present at the hearing. No response, nor any appearance, for defendants Emanuel Welch, in his capacity as Speaker of the House, or Donald Harmon, in his capacity as Senate President, was filed.

¶ 14    We review this matter based on the pleadings; however, we note the following relevant statements by both counsels provided at the hearing on the emergency motion for TRO. Plaintiffs' counsel advised the court, regarding all four counts, "We are not making Second Amendment Constitutional arguments here because those are for a different day and a different court ***." Defense counsel stated, regarding count I, that, "The State can identify the single subject for the first time in litigation. That's what I've done today consistent with the *Wirtz* case from the Illinois Supreme Court [*Wirtz v. Quinn*, 2011 IL 111903]. The single subject is Firearm Regulation."

¶ 15    On January 20, 2023, the circuit court entered a TRO. In its order, the circuit court found plaintiffs met each of the four required elements to grant a TRO for counts I, II, III, and IV. Relevant to count II, the circuit court order stated that although the Illinois Supreme Court has

17

"found that they would not invalidate legislation on the basis of the three[-]readings rule if it has been certified, they went on to say that 'if the General Assembly continues its poor record of policing itself, we reserve the right to revisit this issue on another day to decide the continued propriety of ignoring this Constitutional violation.' " The circuit court thereafter stated, "the time to revisit this practice is now."

¶ 16    Following the entry of the TRO, defendants Pritzker and Raoul timely filed a petition for review of the TRO pursuant to Illinois Supreme Court Rule 307(d) (eff. Nov. 1, 2017). If necessary, additional facts will be presented as part of the analysis below.

¶ 17                                II. ANALYSIS

¶ 18    As a preliminary matter, plaintiffs' response to defendants' petition for review of the TRO asserted that defendants' response to the emergency motion for a TRO should be considered a nullity because it was not verified. Upon review, we find the record devoid of any similar objection made before the circuit court. Failure to object to the unverified pleading in the circuit court results in forfeiture. *In re Application of County Collector*, 295 Ill. App. 3d 711, 718 (1998). The purpose of requiring a party to raise pleading defects before the circuit court is to allow the opposing party the opportunity to cure the alleged defects in the circuit court. *Id.* Because plaintiffs did not object in the circuit court, we conclude this contention is forfeited.

¶ 19    Accordingly, we turn to the narrow issue before us: whether the circuit court erred in granting the TRO. "A temporary restraining order is an emergency remedy issued to maintain the status quo while the court is hearing evidence to determine whether a preliminary injunction should issue." *Delgado v. Board of Election Commissioners of City of Chicago*, 224 Ill. 2d 481, 483 (2007). In order to obtain a TRO, plaintiffs are required to demonstrate the following elements: "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an

18

injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." (Internal quotation marks omitted.) *Hutsonville Community Unit School District No. 1 v. Illinois High School Ass'n*, 2021 IL App (5th) 210308, ¶ 8. "A TRO should not be refused *** merely because the court may not be absolutely certain the plaintiff has the right he claims." *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 541-42 (1983). "The plaintiff is not required to make out a case which would entitle him to judgment at trial ***." *Id.* at 542. "All that is necessary is that the plaintiff raise a fair question as to the existence of a right needing protection, leading the court to believe that the plaintiff will be entitled to the prayed-for relief if the proof presented at trial should sustain its allegations." (Internal quotations marks omitted.) *Hutsonville*, 2021 IL App (5th) 210308, ¶ 11.

¶ 20     Once the plaintiff establishes a fair question that his or her rights were violated, the plaintiff has also established a fair question that he or she would likely prevail on his claim. *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 38. "The purpose of preliminary injunctive relief is not to determine controverted rights or decide the merits of the case, but to prevent a threatened wrong or continuing injury and preserve the status quo with the least injury to the parties concerned." *Hutsonville*, 2021 IL App (5th) 210308, ¶ 11. A circuit court's order granting or denying a TRO is generally reviewed for an abuse of discretion (*Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 11), but where the propriety of the TRO rests on a purely legal issue, our review is *de novo*. *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 63 (2006). "On review, 'we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights.' " *Hutsonville*, 2021 IL App (5th) 210308, ¶ 11 (quoting *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002)). *Prima facie* means "at first sight" and is "a fact presumed to be true unless disproved

19

by some evidence to the contrary." (Internal quotation marks omitted.) *People v. Howard*, 2022 IL App (3d) 210134, ¶ 14.

¶ 21    With regard to count I, plaintiffs alleged that the Act violated the "single subject rule" and therefore should be declared unconstitutional. "Legislative enactments are presumed to be constitutional." *Wirtz v. Quinn*, 2011 IL 111903, ¶ 17. The "party challenging the constitutionality of a statute bears the burden of clearly establishing a constitutional violation." *Id.* A court's finding that a statute is unconstitutional is reviewed *de novo*. *Id.* The "single subject rule" as articulated in article IV, section 8 of the Illinois Constitution states that "[b]ills, except for appropriations and for codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). The purpose of the language is "to prevent surprise in the enactment of legislation" (*People v. Olender*, 222 Ill. 2d 123, 127 (2005) (citing *Meister v. Carbaugh*, 310 Ill. 486, 489 (1923))) and "to prevent the combination of unrelated subjects in one bill to obtain support for the package as a whole, when the separate parts could not succeed on their individual merits" (*County of Kane v. Carlson*, 116 Ill. 2d 186, 214 (1987)).

¶ 22    The Illinois Supreme Court enunciated a two-tier test to determine whether an act runs afoul of the single subject rule. *People v. Sypien*, 198 Ill. 2d 334, 339 (2001). The court determines first whether the act involves a legitimate single subject and then whether the various provisions within an act all relate to the proper subject at issue. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 361-62 (1999) (Freeman, J., specially concurring). "[W]hile the legislature is free to choose subjects comprehensive in scope, the single subject requirement may not be circumvented by selecting a topic so broad that the rule is evaded as 'a meaningful constitutional check on the legislature's actions.' " *Sypien*, 198 Ill. 2d at 338-39 (quoting *Johnson v. Edgar*, 176 Ill. 2d 499, 515-18 (1997)). "The term 'subject,' in this context, is to be liberally construed and the subject

20

may be as broad as the legislature chooses." *Edgar*, 176 Ill. 2d at 515. The rule "does not impose an onerous restriction on the legislature's actions" but "leaves the legislature with wide latitude in determining the content of bills." *Id.* "Nonetheless, the matters included in the enactment must have a natural and logical connection." *Id.* While the legislature may pass legislation that amends several acts, the amendments must relate to the single subject at issue. See *People v. Wooters*, 188 Ill. 2d 500, 512-13 (1999).

¶ 23 Defendants argue that the Act addresses a single subject and classified that subject as the "regulation of firearms." They argue that the title is not controlling and does not overcome the fact that the entirety of the bill's content deals with the regulation of firearms and implementation of said regulation.

¶ 24 Plaintiffs are correct that the title of the Act does not mention firearm regulation. However, the Illinois Supreme Court has clearly held that "an act's title is not necessarily dispositive of its content or its relationship to a single subject." *People v. Boclair*, 202 Ill. 2d 89, 109 (2002). The supreme court reiterated this point in *Wirtz*, 2011 IL 111903, ¶ 32, stating, "Defendants are not limited solely to the contents of the title of an act in offering a single subject rationale." Here, most likely the "subject" was changed for the reasons seen in *Olender*, in that defendants recognized that the court would reject such a sweeping category and created a new "subject" for the Act. 222 Ill. 2d at 140. Given precedent placing little value on the title, any argument regarding the title has little, if any, merit.

¶ 25 The plaintiffs also argued that the description of the bill while it was being argued in the legislature was "INS CODE-PUBLIC ADJUSTERS." The record confirms that the legislation's description throughout the legislative process, and continuing through today, fails to address, in any way, the regulation of firearms. The legislative description, as compared with the newly

21

articulated subject of the "regulation of firearms" by the executive branch, is somewhat more problematic. One could presume such dichotomy between the description and the actual legislation could result in "surprise in the enactment of legislation" if a member of the legislature read only the title before voting on the legislation. *Olender*, 222 Ill. 2d at 127.

¶ 26 While defendants provided no argument on this issue, either before the circuit court or on appeal, it is unlikely that "surprise" would occur given additional constitutional safeguards addressed later in this opinion. Further, we do not see, and plaintiffs fail to explain beyond their claim that this confusion reveals a likelihood of success on the merits, how an erroneous description would affect whether the Act was constrained to the single subject rule dictated by the Illinois Constitution. This is particularly true because defendants are allowed to articulate the single subject based upon the content of the act once a single subject rule challenge has been made. See *Wirtz*, 2011 IL 111903, ¶ 32. As such, we limit our review to the provisions of the Act argued by the plaintiffs in conjunction with the executive branch's claim that the subject is "the regulation of firearms."

¶ 27 The plaintiffs point to four provisions they believe are outside of the subject matter of, and unrelated to, the regulation of firearms. These provisions include portions of the Act that:

"a) Ordered the criminal investigations unit to conduct investigations regarding human trafficking, illegal drug trafficking and illegal firearms trafficking;

b) Amended the law regarding the procurement of bids for certain services related to purchases of certain technology by the Illinois State Police;

c) Modifie[d] the provision of firearms restraining orders; [and]

d) Created new provisions in the law regarding the ban on certain semi-automatic weapons."

22

¶ 28 As noted above, the two-part test first determines whether the Act involves a legitimate single subject and then whether the various provisions within an act relate to the proper subject at issue. *Arangold Corp.*, 187 Ill. 2d at 361-62. To pass the first test, the act in question simply must be not "so broad that the rule is evaded as 'a meaningful constitutional check on the legislature's actions.' " *Boclair*, 202 Ill. 2d at 109 (quoting *Johnson*, 176 Ill. 2d at 515-18). Examples of acts that passed muster under this test are found in the following cases: *Cutinello v. Whitley*, 161 Ill. 2d 409, 423-24 (1994) (all provisions of challenged act pertained to the subject of transportation); *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 257-59 (1992) (all provisions of challenged act pertained to the McCormick Place Expansion Project); *Stein v. Howlett*, 52 Ill. 2d 570, 582-83 (1972) (all provisions of challenged act related to the subject of ethics); *People ex rel. Ogilvie v. Lewis*, 49 Ill. 2d 476, 487 (1999) (all provisions of challenged legislation pertained to the subject of transportation bonds). "Regulation of firearms" is just as— if not more—specific than the subjects of "transportation" or "ethics," which have been found to be sufficient. Accordingly, the State asserted a legitimate single subject.

¶ 29 Step two of the two-tiered analysis set out in *Sypien*, 198 Ill. 2d at 339, requires the court to "discern whether the various provisions within an act all relate to the proper subject at issue." As shown above, plaintiffs pointed to four provisions of the Act which they believed were beyond the subject of the regulation of firearms.

¶ 30 The first involved language that the Division of Criminal Investigation shall "[c]onduct other investigations as provided by law, *including, but not limited to, investigations of human trafficking, illegal drug trafficking, and illegal firearms trafficking*." (Emphasis added.) The portion emphasized is that which was complained of by plaintiffs. Plaintiffs argued that human trafficking and drug trafficking were separate and distinct from firearm regulation. However, the

23

Illinois Supreme Court has "continually adhered to the natural and logical connection test," and "has never held that the single subject rule imposes a second and additional requirement that the provisions within an enactment be related to each other." *Arangold Corp*, 187 Ill. 2d at 356. Accordingly, for this provision of the Act to pass constitutional muster, all that is required is that the investigation of human trafficking and illegal drug trafficking be naturally and logically connected to the investigation of firearm trafficking.

¶ 31    The language about which plaintiffs complained shows that the General Assembly is not expanding or restricting the scope of investigations; it is instead offering clarification of some of the types of "other investigations" that are interrelated. We cannot say there is no natural or logical connection between these types of investigations, as we conclude that it is self-evident that while investigating human trafficking or illegal drug trafficking, illegal firearms trafficking activity might be discovered as well. It would defy reason to conclude that illegal firearms trafficking is never connected to human trafficking or illegal drug trafficking to such an extent that such investigations might overlap. Thus, in light of the test before the court, and the liberal construction afforded to the single subject rule (*Cutinello*, 161 Ill. 2d at 423), we cannot conclude that inclusion of these clarifications offends the subject matter so much as to violate the single subject rule.

¶ 32    Plaintiffs also alleged that the Act's inclusion of an amendment "regarding the procurement of bids for certain services related to purchases of certain technology by the Illinois State Police" violated the single subject rule. Plaintiffs did not argue how the provision violated the rule, but simply alleged that it did. When the provision is viewed in context with the other portions of the Act, it clearly deals with the implementation of the newly created laws pertaining to firearms, because, specifically, it directs the Illinois State Police to secure bids for the technology which will be used to "enforce, regulate, and administer the Firearm Owners Identification Card Act, the

24

Firearm Concealed Carry Act, the Firearms Restraining Order Act, the Firearm Dealer License Certification Act, the Law Enforcement Agencies Data System (LEADS), the Uniform Crime Reporting Act, the Criminal Identification Act, the Uniform Conviction Information Act, and the Gun Trafficking Information Act, or establish or maintain record management systems necessary to conduct human trafficking investigations or gun trafficking or other stolen firearm investigations." Pub. Act 102-1116 (eff. Jan. 10, 2023) (adding 30 ILCS 500/1-10(b)(21)). Thus, it is clear this provision intends to provide for technology allowing for enforcement of the statutes related to firearms. There is no way to reasonably conclude this runs afoul of the single subject rule.

¶ 33   Plaintiffs further alleged that the Act's modification of the law regarding firearm restraining orders violated the single subject rule. Again, plaintiffs do not argue how inclusion of this language violated the rule, but merely conclude that it does. This provision clearly falls under the regulation of firearms because it modifies the duration someone may be restricted from purchasing firearms or when a person may be restricted from selling firearms to a person who has a firearm restraining order entered against them. Accordingly, we cannot reasonably conclude this language runs afoul of the single subject rule.

¶ 34   Finally, plaintiffs argued that the Act "[c]reated new provisions in the law regarding the ban on certain semi-automatic weapons." Again, no argument was made as to how this provision did not fall under the single subject addressing the regulation of firearms. The new provisions contained within the Act which (1) make certain types of firearms illegal, unless registered, (2) make certain magazines and attachments illegal, and (3) limit the ability of persons within Illinois to manufacture, purchase, and sell certain types of firearms (see 720 ILCS 5/24-1.9, 24-1.10) are naturally and logically connected to the single subject of regulation of firearms.

25

¶ 35    For all of these reasons, plaintiffs cannot demonstrate that a fair question exists that they are likely to succeed on the merits as to count I of the complaint. Therefore, we find that the circuit court erred in finding "the [p]laintiffs have raised a question that has a fair likelihood of success of proving the [d]efendants violated the single subject requirement." As plaintiffs have not established a likelihood of success on the merits for count I, we need not address the other three elements for a TRO for this count.

¶ 36    We turn now to count II of the complaint, which alleged the Act violated the three-readings rule found in article IV, section 8 of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d). Of relevance to this allegation, the Illinois Supreme Court has unequivocally stated that "Illinois follows the enrolled-bill doctrine." *Friends of the Parks v. Chicago Park District*, 203 Ill. 2d 312, 328 (2003) (citing cases going back to 1992). As the court explained, the enrolled-bill "doctrine provides that once the Speaker of the House of Representatives and the President of the Senate certify that the procedural requirements for passing a bill have been met, a bill is conclusively presumed to have met all procedural requirements for passage." *Id.* at 328-29. The court added that, "[u]nder this precedent, we will not invalidate legislation on the basis of the three-readings requirement if the legislation has been certified," which means that when a bill has been certified, the act of certification has the effect of "precluding judicial review." *Id.* at 329.

¶ 37    Plaintiffs acknowledged the enrolled-bill doctrine before the circuit court, and that the legislation at issue was certified pursuant to the doctrine. However, plaintiffs asserted the enrolled-bill doctrine should be abandoned and/or abrogated. The circuit court agreed, specifically stating that "the time to revisit this practice is now."

¶ 38    Before this court, plaintiffs acknowledged that although the Illinois Supreme Court has repeatedly threatened "to revisit this issue," they have not yet done so. Nevertheless, plaintiffs

point out that in *Friends of the Parks*, the Illinois Supreme Court clearly stated the following: "We noted in [prior decisions] that the legislature had shown remarkably poor self-discipline in policing itself in regard to the three-readings requirement." *Id.* Plaintiffs then state that "because this court is ever mindful of its duty to enforce the constitution of this state, we take the opportunity to urge the legislature to follow the three-readings rule," because although "separation of powers concerns militate in favor of the enrolled-bill doctrine," nevertheless the court's "responsibility to ensure obedience to the constitution remains an equally important concern." *Id.*

¶ 39    Plaintiffs posited that in light of these pronouncements, the circuit, or appellate courts, being part of the judicial branch, have the power to invalidate the enrolled-bill doctrine and demand actual, rather than presumed, compliance with the three-readings rule. We cannot agree.

¶ 40    The circuit and appellate courts of the State of Illinois are required to apply binding precedent from the Illinois Supreme Court to the facts of the cases before the circuit and appellate courts. See, *e.g.*, *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. When the Illinois Supreme Court has declared the law on a point, only the Illinois Supreme Court can overrule or modify its precedent on that point. *Id.* Lower judicial tribunals, such as the circuit and appellate courts, are bound by the decisions of the Illinois Supreme Court and must follow those decisions. *Id.* Although a lower court "is free to question the continued vitality of [a case], it lacks the authority to declare that precedent a dead letter." *Id.*

¶ 41    Accordingly, in this case, the circuit court did not have the authority to decide if or when the Illinois Supreme Court should revisit the issue raised by the plaintiffs in count II, and this court does not have that authority either. *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28. Because the circuit court lacked the authority to grant the plaintiffs relief pursuant to count II, the circuit court erred when it found that a likelihood of success on the merits existed as to count II. Put another

27

way, plaintiffs simply could not prevail on count II unless and until the Illinois Supreme Court overrules or abrogates its existing, binding precedent with regard to the enrolled-bill doctrine.

¶ 42　That said, we are not unsympathetic to the serious concerns raised by plaintiffs with regard to the issue raised in count II. Unfortunately, the Illinois Supreme Court's warnings regarding past legislative nonconformance with constitutional boundaries (see *Friends of the Parks*, 203 Ill. 2d at 328-29) appear to have gone unheeded and instead are now interpreted as the judiciary's acceptance of, or the judiciary's acquiescence in, the legislature's continued failure to adhere to constitutional procedures when enacting legislation. While compliance with the enrolled-bill doctrine presumes the legislative procedure adhered to constitutional requirements (see *Geja's Cafe*, 153 Ill. 2d at 259), such presumption is readily overcome by evidence revealing the contrary posted on the General Assembly website.

¶ 43　We question the sagacity of continued adherence to the Illinois Supreme Court precedent in light of the legislature's continued blatant disregard of the court's warnings and the constitutional mandates. The three-reading requirement ensures that the legislature is fully aware of the contents of the bills upon which they will vote and allows the lawmakers to debate the legislation. Equally relevant to the three-reading rule is the opportunity for the public to view and read a bill prior to its passage thereby allowing the public an opportunity to communicate either their concern or support for proposed legislation with their elected representatives and senators. Taken together, two foundations of the bedrock of democracy are decimated by failing to require the lawmakers to adhere to the constitutional principle.

¶ 44　To be sure, Illinois is not the only state that has faced or endured repeated ethical lapses associated with gut and replace legislation. However, other states have addressed this issue and demand compliance with the state constitutional mandates. See *Washington v. Department of*

28

*Public Welfare of Commonwealth*, 647 Pa. 220, 188 A.3d 1135 (2018); *State ex rel. ALF-CIO v. Voinovich*, 69 Ohio St. 3d 225, 631 N.E.2d 582 (1994); *Bevin v. Commonwealth ex rel. Beshear*, 563 S.W.3d 74 (2018); *League of Women Voters of Honolulu v. State of Hawai'i*, 150 Hawai'i 182, 499 P.3d 382 (2021).

¶ 45     Our lawmakers take an oath of office to " 'support the constitution of the United States, and the constitution of the state of Illinois.' " 25 ILCS 5/2 (West 2020); Ill. Const. 1970, art. XIII, § 3. The same is required for the circuit court judiciary (705 ILCS 35/2 (West 2020)) as well as the appellate and supreme courts and certain members of the executive branch. Ill. Const. 1970, art. XIII, § 3. Allowing lawmakers to continue to ignore constitutional mandates under the enrolled-bill doctrine, knowing full well the constitutional requirements were not met, belittles the language of the oaths, ignores the need for transparency in government, and undermines the language of this state's constitution.

¶ 46     We further note that our ruling herein provides plaintiffs with the opportunity to attempt to present this issue to the one court with authority to determine if now is the appropriate time to revisit this: the Illinois Supreme Court itself. See, *e.g.*, *Gardner v. Mullins*, 234 Ill. 2d 503 (2009) (allowing appeal, via Illinois Supreme Court Rule 315 (eff. Oct. 15, 2007), of appellate court's ruling on a TRO); see also *Austin v. Board of Education of Community Unit School District 300*, 2022 IL 128205 (majority of Illinois Supreme Court members denying, as moot, petition for leave to appeal decision of appellate court regarding TRO; two members of Illinois Supreme Court dissenting from decision to deny petition for leave to appeal appellate court's TRO ruling). In light of the egregious violations that have been alleged in this case—which, at this point, must be taken as true—we encourage the Illinois Supreme Court to revisit this issue in light of its earlier warnings that the actions of the General Assembly might force it to do so.

29

¶ 47    With regard to count III, plaintiffs alleged that the manner in which the Act was passed violated due process as required by article I, section 2 of the Illinois Constitution, and that accordingly the Act should be declared unconstitutional. Specifically, plaintiffs alleged they "were denied any meaningful opportunity to participate in the passage of [the Act] which attempts to materially impair their fundamental rights to bear arms." As further explanation, plaintiffs alleged that the "due process violation being complained of herein is the complete and total failure of the [d]efendants to comply with express constitutional procedural guarantees afforded the [p]laintiffs under Ill. Const. 1970, art. IV, § 8(d)." In the response filed with this court, plaintiffs stated that the crux of count III is that plaintiffs "demand the legislative process comply with the procedural requirements of the Illinois Constitution, particularly the single subject rule and the three-readings rule." However, because we have found there is no likelihood of success on the merits with regard to counts I and II, we must likewise conclude there is no likelihood of success on the merits of count III, because by its plain language it is contingent upon the existence of potentially meritorious claims on counts I and II. As such, we find the trial court erred in granting a TRO on this basis.

¶ 48    With regard to count IV, plaintiffs present an equal protection claim, based not upon the process by which the Act was passed, but upon the groups created by the enumerated exemptions found in the Act. The Illinois Constitution provides that "[n]o person shall *** be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

¶ 49    "The analysis *** applied by this court in assessing equal protection claims is the same under both the United States and Illinois Constitutions." *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 322 (1996). "The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner." *Id.* "It does not preclude the State from enacting

30

legislation that draws distinctions between different categories of people, but it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation." *Id.*

¶ 50   "We begin with the presumption that the statute is constitutional." *In re D.W.*, 214 Ill. 2d 289, 310 (2005). "In reviewing a claim that a statute violates equal protection, the court applies different levels of scrutiny depending on the nature of the statutory classification involved." *Jacobson*, 171 Ill. 2d at 322-23. "[W]here the constitutional right at issue is one considered 'fundamental' the presumption of constitutionality is weaker, and the courts must subject the statute to the more rigorous requirements of strict scrutiny analysis." *In re D.W.*, 214 Ill. 2d at 310.

¶ 51   Defendants claim there is no fundamental right at issue here and so the level of scrutiny is rational basis. This standard requires the court to determine whether the statute bears a rational relationship to a legitimate government purpose. *People v. Masterson*, 2011 IL 110072, ¶ 24. Defendants' argument is premised on the Illinois Supreme Court's decision in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483 (1984). In *Kalodimos*, the court found the right to bear arms was never seen as an individual right under the federal Constitution (citing *United States v. Miller*, 307 U.S. 174 (1939)) and the same right under the Illinois Constitution was subject to "substantial infringement in the exercise of police power even though it operates on the individual level." *Kalodimos*, 103 Ill. 2d at 509. As such, the court found that the right to bear arms in Illinois was not a fundamental right and, therefore, review of firearm legislation was required only to pass a rational-basis scrutiny test. *Id.*

¶ 52   While compelling, it is more recent pronouncements from the Illinois Supreme Court that foregoes our reliance on *Kalodimos* in this case. In *People v. Aguilar*, the Illinois Supreme Court addressed the second amendment to the United States Constitution (U.S. Const., amend. II) as well

as United States Supreme Court decisions addressing the right to bear arms in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and the Seventh Circuit's decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). *People v. Aguilar*, 2013 IL 112116, ¶¶ 16-19. After considering these decisions, the Illinois Supreme Court found that 720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2008), which "categorically prohibits the possession and use of an operable firearm for self-defense outside the home" and was the statute upon which the defendant's aggravated unlawful use of weapons conviction was based, violated the second amendment, and reversed the conviction. *Id*. ¶¶ 21-22. Similar rulings based thereon were issued. See *People v. Burns*, 2015 IL 117387 (addressing 720 ILCS 5/24-1.6 (West 2008)), and *People v. Chairez*, 2018 IL 121417, ¶ 56 (addressing 720 ILCS 5/24-1(a)(4), (c)(1.5) (West 2012)).

¶ 53    More recently, the Illinois Supreme Court specifically pronounced that the right to bear arms was a fundamental right under the second amendment of the United States Constitution. See *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, ¶ 28. In *Ali*, the court was addressing the constitutionality of ordinances under the uniformity clause of the Illinois Constitution. *Id*. ¶ 18. Plaintiffs challenged the firearm and ammunition taxes set forth in those ordinances. *Id*. ¶ 14. The county argued that the tax classification was justified "to fund the staggering economic and social cost of gun violence in Cook County." *Id*. ¶ 22. Plaintiffs argued that the court must, when considering whether the tax classification was justified in relation to the object of the legislation, recognize the "unique nature of the classification," which burdened "the fundamental right to keep and bear arms for self-defense." *Id*. ¶ 26. In response, the *Ali* court stated:

"We agree that the ordinances impose a burden on the exercise of a fundamental

right protected by the second amendment. At its core, the second amendment protects the

32

right of law-abiding citizens to keep and bear arms for self-defense in the home. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the United States Supreme Court stated that 'it is clear that the Framers and the ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty.' See also *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 37 ('the second amendment right recognized in *Heller* is a personal liberty guaranteed by the United States Constitution and the fourteenth amendment' (citing *McDonald*, 561 U.S. at 791))." *Id*. ¶ 28.

¶ 54    While there is no dispute that the Illinois Supreme Court did not find the right to bear arms under the Illinois Constitution was a fundamental right in 1984 when deciding *Kalodimos*, it is equally undisputable that the Illinois Supreme Court now accepts the second amendment as a "fundamental right" guaranteed by the United States Constitution and the fourteenth amendment. *Id*. We cannot ignore the fact that adherence to *Kalodimos*, in light of the more recent Illinois Supreme Court decisions, runs afoul of the both the supremacy clause and the fourteenth amendment.

¶ 55    The supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) establishes that the United States Constitution constitutes the "supreme Law of the Land." The fourteenth amendment to the United States Constitution states, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ***." U.S. Const., amend. XIV.

¶ 56    Our Illinois Supreme Court held that the fourteenth amendment applies to the States. *Chairez*, 2018 IL 121417, ¶ 23. That court also pronounced in *Ali* that the second amendment was a fundamental right and twice address the fourteenth amendment. *Ali*, 2021 IL 126014, ¶ 28. It is

33

well established that while a state may impose a greater protection of rights under its state constitution, it cannot reduce protection of individual rights below the minimum required under the federal Constitution. See *Oregon v. Hess*, 420 U.S. 714, 719 (1975) (Clark, J., dissenting); *Williams v. Georgia*, 349 U.S. 375, 399 (1955). The Illinois Supreme Court is well aware of these principles. *Ali*, 2021 IL 126014, ¶ 28. As such, the only logical conclusion is that the Illinois Supreme Court abandoned *Kalodimos*, by its decisions in *Aguilar*, *Burns*, *Chairez*, and *Ali*. To conclude otherwise would provide a lesser right of protection under article I, section 22 (Ill. Const. 1970, art. I, § 22) than that proclaimed by the second amendment to the United States Constitution.

¶ 57    As such, we find that the rights set forth in article I, section 22 of the Illinois Constitution represent a fundamental right and next address plaintiffs' contention that the Act violates their rights to keep and bear arms by creating untenable classifications pursuant to the equal protection clause of the Illinois Constitution. This section, which mirrors the language of the fourteenth amendment to the United States Constitution states, "No person shall be deprived of life, liberty or property without due process nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

¶ 58    Under the strict scrutiny analysis, legislation that significantly interferes with the exercise of a fundamental right will be upheld only if it is "necessary to serve a compelling state interest" and is "narrowly tailored" to effectuate that purpose. *In re D.W.*, 214 Ill. 2d at 310. "[T]he legislature must use the least restrictive means consistent with the attainment of its goal." *Id*.

¶ 59    Defendants have argued that plaintiffs have no right in need of protection and are unlikely to succeed on the merits; however, defendants' arguments were based on an erroneous perception that plaintiffs' right to keep and bear arms was not a fundamental right. As such, we find that plaintiffs' allegation that the Act infringes on their rights as Illinois citizens to keep and bear arms

is a sufficiently alleged right in need of protection. Here, plaintiffs' complaint alleged that the legislation's exemption of seven categories of persons from the now prohibited purchase and/or possession of assault weapons, assault weapons attachments, .50-caliber rifles, and .50-caliber cartridges had no basis and therefore violated equal protection guarantees.

¶ 60    In response, defendants claimed the purpose of the Act was to reduce firearm deaths and mass shooting casualties and the exempted categories were based on employment and/or training. We note, however, that no such purpose or basis for the exempted categories is found in the record. The closest this record comes is the naming of the Act as the Protect Illinois Communities Act. While intent of legislation can be found by reviewing the legislative history, based on the legislative procedures utilized for this Act, there is no legislative history. We only have post-enactment statements. Comments issued after legislation is passed is "subsequent legislative history," not "legislative history," and is entitled to little, if any, weight. See *Sullivan v. Finkelstein*, 496 U.S. 617, 631-32 (1990) (Scalia, J., concurring in part) ("Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote."); *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011).

¶ 61    Defendants also argue that the TRO for this count should be denied because plaintiffs failed to allege that any of them were similarly situated to the comparison group, and therefore the equal protection challenge fails, citing *People v. Masterson*, 2011 IL 110072, ¶ 25. We disagree. Here, it is extremely relevant that no purpose of the legislation and no basis for the classifications was provided at the time plaintiffs' pleadings were filed. As such, any allegation regarding similarity would be speculative, at best. Based on the common facts, the legislative process consisted of a frenzied "gut and replace" that failed to comply with our state's constitution. As the basis for the exempted classification was unavailable, it is undeniable that a specific allegation as to how any

plaintiff might be similarly situated to one of the exempted classes would be pure conjecture, beyond the fact that each plaintiff and all those now in an exempted class were similarly situated, and indeed possessed the same rights, prior to January 23, 2023.

¶ 62    Regardless, accepting defendants' recent proclamations as to Act's underlying purpose and the basis for the exemptions, plaintiffs' oral argument that "other rational and logical exemptions" should have been included, assuming the criteria was based solely on employment and/or training, is both compelling and sufficient. The fundamental rights at stake require lawmakers to "narrowly tailor" legislation to effectuate its purpose. *In re D.W.*, 214 Ill. 2d at 313. Perhaps, as suggested during the circuit court hearing, some of the plaintiffs' employment render them more or equally qualified to possess and purchase weapons than the qualifications required for the exempted classes. Perhaps, some of the plaintiffs' training is equal to, or superior to, that of the exempted classes. We note, however, even if plaintiffs' training is not, it would seem logical—given that the plaintiffs are allowed to retain the now prohibited weapons, if properly registered—that the legislation would allow such plaintiffs to obtain sufficient training so that the legislative prohibitions would be equally unnecessary for them. In any event, we find plaintiffs' oral allegations sufficient to address this issue. "A TRO should not be refused *** merely because the court may not be absolutely certain the plaintiff has the right he claims." *Stocker Hinge*, 94 Ill. 2d at 541-42.

¶ 63    Here, we need only determine if plaintiffs presented a fair question regarding the four requirements for a TRO: (1) a clear and ascertainable right in need of protection, (2) no adequate remedy at law, (3) irreparable harm without the TRO, and (4) a likelihood of success on the merits. *Mohanty*, 225 Ill. 2d at 62. For the reasons set forth above, we find plaintiffs alleged sufficient facts to establish a *prima facie* case addressing both the first and fourth requirements. Defendants'

response only claimed monetary damages for the business owners, and we have no facts that would allow us to find that money damages would eliminate the potential constitutional violation alleged by plaintiffs. "[W]hen a violation of constitutional rights has been alleged, a further showing of irreparable injury is not required if what is at stake is not monetary damages." *Makindu*, 2015 IL App (2d) 141201, ¶ 42. Accordingly, we find that plaintiffs alleged sufficient facts for a TRO to issue on count IV.

¶ 64    Our analysis, however, is not complete without considering whether the "equities warrant the entry of such an order." *Id*. ¶ 47. This balancing analysis weighs the benefits of granting the injunction against the possible injury to the opposing party and its effect on the public interest. *Id*. Here, weighing a fundamental right against potentially bruised egos or political pride is no contest. However, the effect on public interest is more challenging as we grapple with a fundamental right to bear and keep arms that allows plaintiffs to defend themselves or their families against a desire to protect the citizens of this state from the random atrocities associated with mass shootings. We hold no crystal ball allowing us to determine the likelihood of potential harm if the TRO is granted, but we temper our lack of prescience with recognition that both interests—whether through the regulation of firearms or through the fundamental right to keep and bear arms—are based on the increased desire to protect and defend loved ones in light of these horrifying and devastating shootings.

¶ 65    Here, we find it extremely relevant that no opportunity for discourse was provided to the citizens of this state that would allow for recognition of the competing interests in accomplishing what we believe is likely a common goal. Nor does it appear that the legislative process allowed for even a moment of debate between the lawmakers to ensure that the enactment of this law was "narrowly tailored" to effectuate the Act's purpose in any manner that would allow a larger

37

exempted group to retain their fundamental rights. For these reasons, we find that balancing the equities favors the issuance of a TRO for count IV, and therefore, we affirm the trial court's order granting the TRO for count IV.

¶ 66                                    III. CONCLUSION

¶ 67    For the foregoing reasons, we conclude that the circuit court erred when it found that a fair question existed as to whether plaintiffs would be entitled to the relief sought under counts I, II, and III, if the evidence presented at a trial were sufficient to sustain the party's factual allegations. Therefore, we reverse the judgment of the circuit court of Effingham County as to those counts. However, for the reasons set forth above, we affirm the TRO issued for count IV. Mandate to issue *instanter*.

¶ 68    Affirmed in part and reversed in part.

¶ 69    JUSTICE MOORE, concurring in part and dissenting in part:

¶ 70    Because I agree with the majority that the plaintiffs have waived any objection to the defendants' failure to verify pleadings in the circuit court, and because I agree that there exists no likelihood of success on the merits of the plaintiffs' first three counts, I concur in the majority's disposition of those claims. However, because I believe the plaintiffs' fourth count also must fail, and therefore the circuit court's granting of the TRO must be reversed in its entirety, I respectfully dissent from the majority's ruling and analysis with regard to count IV.

¶ 71    I begin by stressing that in my view, this appeal does not allow us to address whether Public Act 102-1116 (eff. Jan. 10, 2023) (Act) infringes upon any rights granted by the United States Constitution, specifically the second amendment. This significant point was expressly stated to the circuit court by counsel for the plaintiffs during the hearing on the emergency motion for a temporary restraining order (TRO) when he stated, "We are not making second amendment

38

constitutional arguments here because those are for a different day and a different court ***." Because no issues related to the second amendment of the United States Constitution are before us, as they were not pleaded and were notably disclaimed by counsel for the plaintiffs, I believe our ruling on the grant of the TRO should in no way be interpreted as instruction or guidance as to any issues that may in the future be raised under the second amendment of the United States Constitution.

¶ 72    Turning to the merits of the plaintiffs' complaint, I begin by noting a second reason why I believe that count I fails, not addressed by the majority. I believe that even if this court were able to conclude that the plaintiffs have presented a fair question as to the likelihood of success on the merits on their count I claims, we could not find that they have presented a fair question as to the element of irreparable harm with regard to count I. "A TRO is an extraordinary remedy and the party seeking it must meet the high burden of demonstrating, through well-pled facts, that it is entitled to the relief sought." *Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶ 10. For purposes of a TRO, "to be considered 'well-pleaded,' a party's factual allegations must be supported by allegations of *specific* facts." (Emphasis in original.) *Id.* Allegations that are "cursory," or "inexplicably lacking in specifics," are not sufficient to support the granting of a TRO. *Id.* ¶ 11. This is true because "the standard for injunctive relief is far too high for a court to rely solely on the moving party's innuendo." *Id.* As a result, "broad, conclusory allegations are insufficient to establish a plaintiff's entitlement to temporary injunctive relief." *Bridgeview Bank Group v. Meyer*, 2016 IL App (1st) 160042, ¶ 15. Moreover, although additional evidence may be developed at the preliminary injunction stage of proceedings, its absence from the record at the time of seeking a TRO "supports the denial of the extraordinary remedy of a [TRO]." *Id.* ¶ 20.

¶ 73    A recent decision from this court, *Hutsonville Community Unit School District No. 1 v. Illinois High School Ass'n*, 2021 IL App (5th) 210308, is illustrative of the significance of these principles with regard to the element of irreparable harm. In that case, the court held that the "[p]etitioners provided undisputed facts raising a *prima facie* case with respect to," *inter alia*, the irreparable harm element, because the petitioners "alleged that preclusion from the State Series removed any possibility for Hutsonville or its students to compete for that year, and because I.S. is a senior, she would never again be able to participate in the State Series." *Id.* ¶ 9. Likewise, in *Belden v. Tri-Star Producing Co.*, 106 Ill. App. 3d 192, 202 (1982), a panel of judges from this district held that "[b]ecause an injunction is an extraordinary remedy, the complaint must allege facts which entitle the plaintiff to the remedy, and cannot present mere conclusions unsubstantiated by facts." The court ruled that in that case, "[e]ven a cursory examination of [one count of the complaint] reveals that it is deficient in the allegation of facts which could support either claim" made in the case. *Id.* The court held that the deficiencies in the complaint left "the reader to guess not only what activities *** should be enjoined, but also why money damages would be inappropriate, and what injury would occur without the injunction." *Id.* Accordingly, the court held that the count in question could not "support any injunctive relief," and that the trial court did not err when it denied injunctive relief as to that count. *Id.*

¶ 74    In the present case, the circuit court, at the outset of section II of the order granting the TRO, stated that the plaintiffs were "being immediately and irreparably harmed each day in which their fundamental right to bear arms is being denied and that this harm is continuing in nature." The circuit court did not explain how it reached this conclusion based upon the factual allegations in the pleadings before it. Instead, the circuit court stated that "[w]hen a violation of Constitutional rights has been alleged, a further showing of irreparable injury is not required" if what is at stake

40

is not monetary damages. In support of this proposition, the circuit court cited *Makindu v. Illinois High School Ass'n*, 2015 IL App (2d) 141201, ¶ 42, wherein our colleagues in the Second District did indeed make such an assertion. However, *Makindu* involved allegations that the defendant in question violated the plaintiff's "equal protection rights under both the United States and the Illinois Constitutions." *Id.* ¶ 9. As the majority notes above, the analysis applied in assessing equal protection claims is the same under both the United States and Illinois Constitutions (see, *e.g.*, *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124 (1993)), so it is not surprising that throughout the remainder of its opinion, the *Makindu* court analyzed the federal and state equal protections claims together, without ever differentiating between the two, and sometimes citing federal law, while other times citing Illinois law. 2015 IL App (2d) 141201, ¶¶ 9-50.

¶ 75    In support of the assertion adopted by the circuit court in this case—that when a violation of constitutional rights has been alleged, a further showing of irreparable injury is not required if what is at stake is not monetary damages—the *Makindu* court cited two federal cases, which in turn cited additional federal cases, all of which pertained to alleged violations of the United States Constitution, and none of which discussed or analyzed pleading requirements in cases arising in Illinois and invoking only Illinois law. *Id.* ¶ 42 (citing *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978), and *Baskin v. Bogan*, 983 F. Supp. 2d 1021, 1028 (S.D. Ind. 2014)). As explained above, in this case the plaintiffs have not invoked the protections of the United States Constitution, only the Illinois Constitution, and only one count—count IV—makes an equal protection claim under the Illinois Constitution. Accordingly, I do not believe the *Makindu* analysis of the irreparable harm element is apposite to count I of this case, and I do not believe it can be used to excuse the pleading requirements discussed above. As explained above, count I seeks

41

redress for an alleged violation of the single subject rule. I am aware of no Illinois precedent that applies a *Makindu* irreparable harm pleading analysis to such a claim.

¶ 76    In this case, the plaintiffs' verified emergency motion for a TRO alleged, with regard to all four counts of the complaint and the element of irreparable harm, that the "[p]laintiffs are being immediately and irreparably harmed each and every day in which they continue to be subjected [to the Act] and these harms are a continuing transgression against their fundamental rights to bear arms." They further alleged that "at any given moment they could be arrested for misdemeanor and/or felony offenses while engaging in their constitutionally guaranteed rights to bear arms." Although I agree with the majority that under the *Makindu* analysis, these allegations are sufficient to meet the irreparable harm element for the equal protection claim raised in count IV, I nevertheless believe they are too vague, cursory, and conclusory to satisfy the element for purposes of count I. Accordingly, even if we were to conclude that the plaintiffs have presented a fair question as to the likelihood of success on the merits on their count I claims—which we cannot— I believe we could not find that they have presented a fair question as to the element of irreparable harm with regard to count I.

¶ 77    Turning to count IV, as noted by the majority, in this count the plaintiffs present an equal protection claim, based not upon the process by which the Act was passed, but upon the group created by the enumerated exemptions found in the Act. However, I believe the majority has failed to adequately address a crucial threshold matter relating to count IV. As the Illinois Supreme Court has stated, "it is axiomatic that an equal protection claim requires a showing that the individual raising it is similarly situated to the comparison group." *People v. Masterson*, 2011 IL 110072, ¶ 25. If a party fails to show that he is similarly situated to the comparison group, his equal protection challenge fails. *Id.* The plaintiffs' complaint failed to allege how each, or even any, of

the plaintiffs are similarly situated to the exempted group set forth in the Act. The plaintiffs' complaint and arguments point to a hypothetical Navy SEAL, but failed to allege this scenario was applicable to the plaintiffs. As set forth above, "to be considered 'well-pleaded,' a party's factual allegations must be supported by allegations of *specific* facts." (Emphasis in original.) *Capstone Financial Advisors, Inc. v. Plywaczynski*, 2015 IL App (2d) 150957, ¶ 10. Allegations that are "cursory," or "inexplicably lacking in specifics," are not sufficient to support the granting of a TRO. *Id.* ¶ 11. This is true because "the standard for injunctive relief is far too high for a court to rely solely on the moving party's innuendo." *Id.* As a result, "broad, conclusory allegations are insufficient to establish a plaintiff's entitlement to temporary injunctive relief." *Bridgeview Bank Group v. Meyer*, 2016 IL App (1st) 160042, ¶ 15. Therefore, because the plaintiffs have failed to allege facts demonstrating that they are similarly situated to the exempt group complained of, their equal protection challenge fails, and the circuit court's granting of the TRO must be reversed in its entirety.

¶ 78    I also cannot agree with the majority that if we were to further analyze count IV, strict scrutiny would apply. The plaintiffs contended that the equal protection claim should have been examined under strict scrutiny because "the right being implicated in [the Act] is the fundamental right to bear arms and as such any analysis of due process or equal protection must pass strict scrutiny." With regard to the status of the right in question as a fundamental right, the plaintiffs acknowledged that in *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491, 509 (1984), the Illinois Supreme Court ruled that for purposes of the provisions of the Illinois Constitution that address the right to bear arms—which are markedly different from the provisions of the second amendment to the United States Constitution, because the Illinois provisions begin with the statement that the right is "[s]ubject only to the police power"—the right to bear arms is not a

43

fundamental right, and thus due process and equal protection claims brought in an attempt to remedy alleged infringements of that right are assessed under the rational basis test, not strict scrutiny. The plaintiffs contended, however, that in light of subsequent "federal jurisprudence, the holding in *Kalodimos* no longer applies." In support of this proposition, the plaintiffs asked this court to consider the recent Illinois Supreme Court decision in *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, in which the court ruled that county tax ordinances on firearms and ammunition violated the uniformity clause of the Illinois Constitution. In *Ali*, the Illinois Supreme Court stated that it "agree[d] that the ordinances impose a burden on the exercise of a fundamental right protected by the second amendment." *Id.* ¶ 28. As a factual matter, *Ali* involved a claim under, *inter alia*, both the second amendment to the United States Constitution and the Illinois constitutional provisions regarding the right to bear arms. *Id.* ¶ 6. Accordingly, it is not surprising that the court would mention "a fundamental right protected by the second amendment." At no point did the court state that *Kalodimos* was no longer good law, or in any other way imply that the right to bear arms is now a fundamental right under the Illinois Constitution. Thus, I cannot attribute to *Ali* the significance the plaintiffs desire.

¶ 79 Accordingly, in light of the only extant precedent on this question, the only way this court could find that a fair question existed that the plaintiffs had a likelihood of success on the merits of this claim under a strict scrutiny equal protection analysis would be to find that *Kalodimos* has been overruled by a case or cases other than *Ali*. There is no evidence to support such a conclusion, and as explained above with regard to the other counts before us in this appeal, the circuit and appellate courts of the State of Illinois are required to apply binding precedent from the Illinois Supreme Court to the facts of the cases before the circuit and appellate courts. See, *e.g.*, *Yakich v. Aulds*, 2019 IL 123667, ¶ 13. Also as explained above, when the Illinois Supreme Court has

44

declared the law on a point, only the Illinois Supreme Court can overrule or modify its precedent on that point. *Id.* Put another way, only the Illinois Supreme Court could rule that in a case such as this one—where the plaintiffs pointedly do not invoke the protections of the second amendment to the United States Constitution, and in fact pointedly disclaimed, in the circuit court, "making second amendment constitutional arguments [in this case]"—the development of federal precedent related to the second amendment to the United States Constitution nevertheless has rendered untenable the Illinois Supreme Court's previous holding that the right to bear arms under our state constitution is not a fundamental right.

¶ 80     I believe the analysis employed by the majority with regard to this point is flawed. The United States Constitution and the Illinois Constitution are separate documents, enacted by separate constituencies at separate times. Sometimes these two documents offer the same level of protection, sometimes they do not. In this case, they do not. With regard to the right to bear arms, the United States Constitution offers a stronger level of protection, because the right to bear arms under the second amendment is a fundamental right. The Illinois Constitution—unless or until *Kalodimos* is overruled—offers a weaker level of protection, because the right to bear arms has not been declared to be a fundamental right.

¶ 81     Accordingly, although the majority is certainly correct that the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2) establishes that the United States Constitution constitutes the "supreme Law of the Land," and is correct that a state may impose a greater protection of rights under its state constitution, but cannot reduce protection of individual rights below the minimum required under the federal Constitution (see, *e.g.*, *Oregon v. Hess*, 420 U.S. 714, 719 (1975) (Clark, J., dissenting); *Williams v. Georgia*, 349 U.S. 375, 399 (1955)), in this case the plaintiffs have stated emphatically that they are not proceeding under the United States

45

Constitution, and thus have clearly and unequivocally chosen not to avail themselves of the level of protection offered by the second amendment. That leaves only the protection offered by the Illinois Constitution, which pursuant to *Kalodimos* does not afford to the plaintiffs a fundamental right and does not entitle them to strict scrutiny analysis of their count IV equal protection claim.

¶ 82    Put another way, when a party appears before an Illinois court and claims that the party possesses a right that the party claims has been violated, the court is obliged to consider what the *source* of the purported right is. In this case, the plaintiffs have affirmatively proclaimed that the source of their rights is not the second amendment, but is instead the provisions of the Illinois Constitution that address the right to bear arms. Again, the Illinois Constitution—unless or until *Kalodimos* is overruled—does not afford to the plaintiffs a fundamental right and does not entitle them to strict scrutiny analysis of their count IV equal protection claim.

¶ 83    Accordingly, because in this case the circuit court did not have the authority to decide that *Kalodimos* has been overruled, and because this court does not have that authority either, I do not believe we would be able to  consider, for purposes of determining whether a fair question existed as to the plaintiffs' likelihood of succeeding on the merits of count IV, the allegations in count IV under strict scrutiny analysis. That said, I hasten to add that I, too, am not unsympathetic to the plaintiffs' position with regard to this question. In fact, if we were reversing the circuit court entirely, as I believe we are compelled by the law to do, I would encourage the plaintiffs to appeal our decision and ask the Illinois Supreme Court to revisit this issue in light of the changing landscape of federal jurisprudence referenced by the plaintiffs, and the potential impact that evolving jurisprudence might have on the court's view of whether the right to bear arms is a fundamental right under the Illinois Constitution.

¶ 84      For the foregoing reasons, I respectfully dissent from the decision of the majority to affirm

the circuit court.

*Accuracy Firearms, LLC, et al. v. Pritzker, et al.*, 2023 IL App (5th) 230035

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Effingham County, No. 23-MR-4; the Hon. Joshua C. Morrison, Judge, presiding. |
| **Attorneys for Appellants:** | Attorney General of Illinois—Civil Division and Leigh Jacqueline Jahnig, of Chicago, for appellants. |
| **Attorneys for Appellees** | Thomas Guy DeVore, of Greenville, for appellees. |